**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **LOGANTREE LP,** <br>               **Plaintiff,** <br><br>    *v.* <br><br> **APPLE INC.,** <br>               **Defendant.** | **6:21-CV-00397-ADA** |

**ORDER GRANTING DEFENDANT APPLE INC.'S**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) [ECF No. 23]**

For consideration on this date is Defendant Apple Inc.'s ("Apple's") Motion to Transfer
Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California filed on September
3, 2021. ECF No. 23 (the "Motion"). Plaintiff LoganTree LP ("LoganTree") filed an opposition
on September 17, 2021, ECF No. 24, to which Apple filed a reply on October 1, 2021, ECF No.
25.[1] Apple also filed a notice of supplemental authority on December 20, 2021, ECF No. 31, to
which LoganTree responded on December 23, 2021, ECF No. 32. After careful consideration of
the Motion, the Parties' briefs, and the applicable law, the Court **GRANTS** Apple's Motion to
Transfer Venue Pursuant to 28 U.S.C. § 1404(a).

**I. BACKGROUND**

On April 23, 2021, LoganTree filed this Action against Apple, alleging infringement of
U.S. Patent No. 6,059,576 (the "'576 patent"). ECF No. 1 (the "Complaint"). The Complaint

---

[1] On October 8, 2021, LoganTree filed a Motion to Strike Defendants' Late-filed Reply in Support
of its Motion to Transfer Venue and in the Alternative Motion for Leave to File Plaintiff's Surreply
in Opposition to the Motion to Transfer Venue. ECF No. 26. Apple responded on October 15,
2021, ECF No. 28, requesting that the Court deny LoganTree's Motion to Strike and Motion for
Leave; Apple further requested that it be granted leave to file a sur-surreply if LoganTree's Motion
for Leave was granted. On May 3, 2022, the Court **DENIED** LoganTree's Motion to Strike and
Motion for Leave via text order (mooting Apple's request for leave to file a sur-surreply).

accuses the Apple watch 1st Generation and Series 1-3 and identifies the allegedly infringing functionality as (1) tracking user movement data based on activity goals set by the user; and (2) storing information related to an event along with time stamp information associated with the event (collectively, "Accused Functionalities"). ECF No. 1 ¶¶ 1, 19–31.

LoganTree is organized under the laws of the state of Nevada and has a principal place of business in Boerne, Texas. ECF No. 24 ¶ 6. Plaintiff claims that the '576 patent was developed in Boerne while inventor Theodore Brann was living and working there. *Id.* ¶ 5. Apple is incorporated and headquartered in Cupertino, California in the Northern District of California ("NDCA"). ECF No. 23 at 1. Additionally, Apple claims that the accused products were designed and engineered in the NDCA. *Id.*

On September 3, 2021, Apple filed its Motion to Transfer Venue to the NDCA under 28 U.S.C. § 1404(a), citing, among other facts, those above. ECF No. 23. The Court **GRANTS** that Motion.

## II. LEGAL STANDARD

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir.

2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *See Burbank Int'l, Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977). A court should not deny transfer where "only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech*

*Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show that that factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

**A.    Venue and Jurisdiction in the Transferor Forum**

This Court finds, and the parties do not contest, that this Action could have been brought in the NDCA. *See* ECF No. 23 at 5; ECF No. 24 ¶ 19.

**B.    Private Interest Factors**

   1.    <u>Relative Ease of Access to Source of Proof</u>

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019). This factor relates to the relative—not absolute—ease of access to non-witness evidence. *See In re Radmax*, 720 F.3d at 288; *In re Apple*, 979 F.3d at 1339. And "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple*, 979 F.3d at 1340. In *Radmax*, the Fifth Circuit held that, though the distance between two divisions was slight, because all the documents and physical evidence were in the transferor division, this factor favored transfer. 720 F.3d at 288.

The Fifth Circuit has held that, even in the context of electronic documents that can be accessed anywhere on earth, this factor is not superfluous. *See Volkswagen II*, 545 F.3d at 316; *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). Though having persistently characterized that holding as antiquated in the setting of a modern patent dispute, this Court will continue to analyze this factor with a focus on the location

4

of: physical documents and other evidence; and the hardware storing the relevant electronic documents. *See, e.g.*, *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 U.S. Dist. LEXIS 137400, at *7 & n.1 (W.D. Tex. July 22, 2021). The Federal Circuit has recently held, however, that it is error not to consider: "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 U.S. App. LEXIS 33789, at *7 (Fed. Cir. Nov. 15, 2021).

*Evidence in the NDCA.* Apple asserts that much of its physical and electronic evidence is housed at Apple's headquarters in the NDCA. ECF No. 23 at 7. Supported by a declaration from Mark Rollins, a Finance Manager at Apple, ECF No. 23-1 (the "Rollins Declaration"), Apple alleges that technical documentation is in the NDCA, where the research, design, and development of the Accused Functionalities took place. Mr. Rollins contends that "working files, electronic and paper documents concerning the Accused Features reside on local computers and/or servers . . . in or around the NDCA." ECF No. 23-1 ¶ 6. He also attests that relevant source code was "developed, coded, and tested in the NDCA," is stored there, and is controlled on a "need-to-know" basis. *Id.* Mr. Rollins further testifies that information concerning the marketing, sales, and financial information lies in the NDCA. ECF No. 23 at 7

LoganTree criticizes Apple for not providing "any specific evidence that the electronic documentation and information is physically stored in the Northern District of California," and instead simply claiming that electronic documents are on servers "accessible in California by Apple employees." ECF No. 24 ¶ 25 (quoting ECF No. 23 at 3, 4). LoganTree posits that, "without specific evidence showing the specific servers where the evidence is located, Apple cannot carry

its burden." *Id.* (citing *Jenam Tech, LLC v. Google LLC*, No. 6:20-cv-00453-ADA, 2021 WL 2870694, at *3–4 (W.D. Tex. July 8, 2021)).

The Federal Circuit vacated the *Jenam* opinion on which LoganTree relies, attributing error to this Court for not considering that "that source code and technical documents relating to the accused activities, as well as a significant number of documents relating to [the defendant's] marketing, finances, and sales, were created and are maintained in the [transferee forum]." *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021); *see also In re Google LLC*, 2021 U.S. App. LEXIS 33789, at *7 (identifying error under similar reasoning). The Court, therefore, accords weight to the Rollins Declaration's representation that the source code and technical documents relating to the Accused Functionality, and marketing, sales, and financial information, were and are created and maintained in the NDCA.

*Evidence in the WDTX.* Supported by a declaration from the late Theodore Brann, inventor of the '576 patent, ECF No. 23-8 (the "Brann Declaration"), LoganTree argues that significant evidence resides in this District, *see* ECF No. 24 ¶ 22. According to LoganTree, "Theodore developed, implemented, and prosecuted the '576 Patent" in this District and "[m]ost if not all physical evidence relating to the '576 Patent is located . . . at the Brann's residence." *Id.* Moreover, Mr. Brann's declaration notes that he incorporated a company named "Bio Kinetics Corporation" as the "vehicle for developing and marketing a device based on the patented technology that we called BackTalk." ECF No. 23-8 ¶ 29. HEB, a Texas-based chain of grocery stores, leased dozens of BackTalk devices from Bio Kinetics. *Id.* ¶ 31. Mr. Brann testified that "All documents pertaining to Bio Kinetics, the development and marketing of the BackTalk device, and Bio Kinetics' contractual relationship with H.E.B. are located with me in Boerne." *Id.*

Apple contends that little weight should be accorded to the Brann Declaration because it was executed in 2017; Apple questions whether it accurately reflects the current state and location of the evidence referred to therein. ECF No. 25 at 2. The Court is sympathetic to this argument. Though the declaration may go to show where relevant evidence related to the '576 patent and Bio Kinetics *was* in 2017, it is a less reliable indicator of where that evidence rests today.[2] The Court, therefore, accords *some* weight to the late Mr. Brann's testimony, finding that it provides only *some* indication that LoganTree's evidence relevant to the '576 patent resides in this District. Apple also notes that Bio Kinetics is defunct. That does not, however, diminish the weight the Court accords to Bio Kinetics-related evidence that was almost surely kept with any evidence related to the '576 patent, consistent with Mr. Brann's testimony. But the weight owed to the Bio Kinetics evidence *is* attenuated because the only proof of its location is the five-year-old Brann Declaration. The Court also notes that, in patent infringement cases, the "bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Accordingly, the Court presumes that Apple will likely have more relevant evidence than LoganTree and its now-defunct affiliates. Moreover, LoganTree and the Brann Declaration describe their relevant evidence in the most general terms. *See, e.g.*, ECF No. 24 ¶ 22 ("[A]ll documentation and evidence pertaining to the issues in this case . . . ."); *id.* ¶ 23 ("[D]ocuments and evidence pertaining to its work on the BackTalk device . . . ."). Without more

---

[2] In its Motion for Leave to File a Surreply, LoganTree offered a new declaration from Theodore Brann's son, Jeremy Brann, meant to provide more up-to-date information. LoganTree has not alleged that it was incapable of offering a declaration from Jeremy Brann when responding to Apple's Motion—the Court will not consider such a tardy declaration. *See, e.g.*, *Eagle TX I SPE LLC v. Sharif & Munir Enters., Inc.*, 2014 U.S. Dist. LEXIS 23138, 2014 WL 696523, at *1 n.1 (N.D. Tex. Feb. 24, 2014) (declining to consider an affidavit attached to defendants' reply because it contained new arguments and because the court has discretion not to consider new arguments/evidence raised in reply briefs).

substance, it is difficult for this Court to find that LoganTree maintains significant amounts of relevant evidence in this District.

Plaintiff also requests that the Court consider evidence maintained by the two Texas-based attorneys, Jerry Keys and Michael Caywood, who prosecuted the '576 patent. ECF No. 24 ¶ 24. Apple asserts that this Court should not presume that these attorneys have relevant documents merely because they prosecuted the asserted patent. ECF No. 25 at 3 (citing *U.S. Ethernet Innovations, LLC v. Ricoh Americas Corps.*, No. 6:12-cv-235, 2013 WL 12141402, at *2–3 (E.D. Tex. Mar. 21, 2013)). But the Federal Circuit recently cautioned courts against "the categorical rejection of the significance of identified witnesses" like prosecuting attorneys. *In re Netflix, Inc.*, No. 2022-110, 2022 U.S. App. LEXIS 1390, at *11 (Fed. Cir. Jan. 19, 2022). Under similar rationale, this Court will not simply reject these attorneys as relevant sources of evidence given their undisputed connection to the prosecution of the '576 patent. But Apple has provided competent evidence that Mr. Caywood resides in the NDCA; the Texas Bar reflects a California address. ECF No. 25-5. If Mr. Caywood maintains relevant evidence, it is likely in California— nearer the transferee forum. This neutralizes the effect any evidence Mr. Keys may have, nearer to this District, on this factor.

The Court finds that this factor favors transfer because Apple likely maintains several significant sources of proof regarding infringement in the NDCA and LoganTree has failed to make a compelling case that this District is home to substantial amounts of evidence.

### 2.    Availability of Compulsory Process

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense."

Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). When "there are several witnesses located in the transferee forum and none in the transferor forum," this factor favors transfer. *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021).

The Federal Circuit has held that, under Fifth Circuit law, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018); *see also In re Hulu, LLC,* No. 2021-142, 2021 U.S. App. LEXIS 22723, at *10 (Fed. Cir. Aug. 2, 2021) ("[W]here . . . the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."). Further, this Court cannot "discount" third-party "entities" having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 U.S. App. LEXIS 33788, at *8 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

*Witnesses in the NDCA.* Apple argues that this Court should consider that the NDCA has the authority to compel two potentially relevant prior art inventors, Hutchings and Siyami. Apple attached to its Motion charts mapping the Hutchings and Siyami references to claim(s) of the '576 patent. ECF Nos. 23-12, 23-13. It also attached reports identifying California addresses as the last-

known addresses for people with the same full names as Hutchings and Siyami. ECF Nos. 23-5, 23-7. Apple represented in its reply brief that its preliminary invalidity contentions, served the same day, relied on the Hutchings and Siyami references as primary references. ECF No. 25 at 5.

LoganTree's opposition does not challenge the relevance or applicability of the Hutchings and Siyami references. The Court, having reviewed the relevant charts, has no reason to question the relevance or applicability of these references. LoganTree does not challenge that Hutchings and Siyami reside in California—nor does this Court have any reason to. Rather, LoganTree first argues that prior art witnesses are unlikely to testify and second argues that Apple has not shown that these witnesses would be unwilling to testify. ECF No. 24 ¶¶ 30–31. As to the first argument, the Federal Circuit has warned this Court not to categorially disregard prior art witnesses under LoganTree's reasoning. *In re Hulu*, 2021 U.S. App. LEXIS 22723, at *8–9. The Court has no reason to disregard Hutchings and Siyami merely because they are prior art inventors. As to the second argument, the Federal Circuit has held "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1. Because there is no indication that Hutchings and Siyami are affiliated with Apple or otherwise willing to testify at trial, the Court weighs Hutchings and Siyami under this factor.

*Witnesses in the WDTX.* LoganTree has asserted that prosecuting attorneys and former Bio Kinetics employees reside in this District. ECF No. 24 ¶¶ 30, 32, 37, 39. As to the prosecuting attorneys, and as explained under the factor above, the Court finds that Mr. Caywood likely resides in California and Mr. Keys likely resides in Texas. Accordingly, the Court finds that, under this factor, these two witnesses neutralize one another.

The Court will not accord weight to any purported Bio Kinetics witnesses for a few reasons. LoganTree was unable to identify Bio Kinetics personnel by name despite being in prime position to do so. Like LoganTree, Bio Kinetics was incorporated by Theodore Brann. ECF No. 23-8 ¶ 9. Yet the Brann Declaration fails to identify even one Bio Kinetics employee with knowledge relevant to this Action. It is unclear if there are any Bio Kinetics personnel whom LoganTree did not also employ. Moreover, it is undisputed that Bio Kinetics is defunct. *See* ECF No. 25 at 6. The Court is not comfortable presuming, then, that Bio Kinetics personnel—to the extent any unique Bio Kinetics personnel exist—still reside in this District even after Bio Kinetics has ceased operations.

This Court finds that this factor favors transfer because there are at least two prior artists in California whose testimony the NDCA could likely compel whereas LoganTree has failed to identify any relevant potential witnesses this Court could compel to testify.

### 3.    Cost of Attendance of Willing Witnesses

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 U.S. Dist. LEXIS 171102, at *17. The Fifth Circuit has established the "100-mile rule," providing that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has held that, where witnesses would be required to travel a significant distance no matter where they testify, those witnesses will only be slightly more inconvenienced by having to travel to, for example, California, compared to Texas. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317); *In re Genentech*, 566 F.3d at 1344 (stating that the 100-mile rule should not be "rigidly" applied in the

context of foreign witnesses). It has opined elsewhere that "[t]he comparison between the transferor and transferee forum is not altered by the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *12 (Fed. Cir. Sept. 27, 2021) ("[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer."). And, in yet other cases, it has considered only hypothetical travel-time statistics, and not distance, under this factor. *See, e.g.*, *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *12.

The Federal Circuit has recognized that "an employer's cooperation in allowing an employee to testify may diminish certain aspects of inconvenience to the employee witness (for instance, the employee is not acting contrary to their employer's wishes)." *In re Hulu,* No. 2021 U.S. App. LEXIS 22723, at *13. Elsewhere it has stated that inconvenience is not attenuated *at all* when the witnesses are employees of the party calling them. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021).

*Witnesses in the NDCA*. The Rollins Declaration identifies several current Apple employees located in the NDCA. ECF No. 23 at 9–10; ECF No. 23-1 ¶¶ 7–12. As to technical personnel, Mr. Rollins names Karthik Jayaraman Raghuram as a Software Development Engineering Manager for Apple Watch; his team was purportedly responsible for the "research, design, and development of a broad portfolio of motion sensor-based algorithms and software, including for fitness, safety, and health applications for the Accused Products." ECF No. 23-1 ¶ 7. "This included the algorithms and software used to collect, process, filter, and store movement data from sensors in the Accused Products, such as the accelerometer and gyroscope." *Id.*

Mr. Rollins also identified Wes Smith, a Hardware Development Manager in Apple's Motion Sensing Hardware group. Mr. Rollins testified that Mr. Smith and his team were "responsible for the research, design, and development of motion sensors in the Accused Products, including the accelerometer and gyroscope, and working with Apple's external vendors to source, specify, and calibrate these sensors for integration into the Accused Products." ECF No. 23-1 ¶ 8. The Rollins Declaration further names David Clark as a Software Engineering Manager for the Apple Watch. *Id.* ¶ 9. He and his team are purportedly "responsible for the research, design, and development of health and fitness applications that track and use movement data collected by the Accused Products." *Id.*

Mr. Rollins further identifies the following NDCA-based Apple personnel as having knowledge relevant to "marketing, licensing, and finances associated with the Accused Product": Eric Jue, a Product Line Manager in the Apple Watch Product Marketing group; Jackie Harlow, a Senior Counsel in Intellectual Property Transactions at Apple; and Mr. Rollins himself, who is a Finance Manager at Apple. *Id.* ¶¶ 1, 10–13.

The Court is satisfied that these witnesses work from the NDCA, that they have relevant knowledge, and that the NDCA is a more convenient forum for these personnel. LoganTree suggests that these Apple personnel are owed lesser weight because "it is unclear how Apple chose these witnesses, whether Apple will actually call these witnesses, or why Apple cannot use the employees in Austin that share similar roles." ECF No. 24 ¶ 35. The Court cannot agree. Mr. Rollins has sufficiently explained the relevant knowledge that these witnesses possess. The Court is satisfied that these potential witnesses have "relevant and material information"; that is all the Court can demand at this point. *See In re Hulu*, 2021 U.S. App. LEXIS 22723, at *9. Accordingly, the Court is satisfied that the convenience of these potential witnesses favors transfer.

13

*Witnesses in the WDTX.* As indicated above, LoganTree's opposition is dubious of Apple's choice of witnesses. According to LoganTree, "Apple has other individuals who could also provide testimony concerning the relevant issues for this case who are located in [Apple's] offices in Austin, Texas," in this District. *Id.* ¶ 10. LoganTree identified several Texas-based Apple employees who it proposes have relevant and material knowledge; LoganTree almost certainly identified these witnesses by conducting no other research but searching LinkedIn. LoganTree attached LinkedIn profiles for each of these Austin-based personnel. LoganTree names three "Supply/Demand Management" personnel with duties related to the Apple Watch: Derek Parinella; Sumit Gupta; and Joe Mihalic. LoganTree also names Ryan Richards, a Specialty Program Manager who worked on the Apple Watch Series 3 and Dave Russell, formerly an Apple Watch Edition Team Manager. *Id.* LoganTree further posits that there are Apple Senior Counsel, like Ms. Harlow, serving in Austin. *Id.* ¶ 12 (naming Tony Petro, Jason Wakefield, and Anuj Dharia).

The convenience of these witnesses is owed no weight. Gauging and articulating the relevance of a party's personnel to a particular case—especially personnel from a company the size of Apple—based only on vague LinkedIn profiles is a challenge. LoganTree is itself unable to articulate the relevant and material knowledge these employees possess. The Court is in no better position. *See In re Google*, 2021 U.S. App. LEXIS 29137, at *20 (allocating no weight to a potential witness that plaintiff found on LinkedIn because plaintiff "was not at all specific about what testimony it expected to elicit from [that witness], or even if he possesses knowledge of the facts relevant to this infringement action"). LoganTree merely posits that the Apple personnel it has identified have similar "positions" to those the Rollins Declaration identified. But LoganTree has not, in this Court's judgment, shown that the Apple personnel it identified, excepting the

14

Austin-based Senior Counsel, *are* in similar positions to those potential witnesses Mr. Rollins identified. There is at least no symmetry in the titles. Even as to the Austin-based Senior Counsel, LoganTree has not shown that Mr. Petro, Mr. Wakefield, and Mr. Dharia have knowledge relevant and material to Apple's patent licensing activities, and specifically licensing related to the Accused Products (though the Rollins Declaration puts Ms. Harlow in that camp). For example, Tony Petro's LinkedIn profile indicates that he co-manages Apple's "silicon engineering patent portfolio." ECF No. 24, Ex. G. Silicon engineering is not, as far as this Court can tell, relevant to the Accused Functionality or the Accused Product. The relevance of these witnesses is far too speculative. The Court, therefore, accords little to no weight to their convenience.

LoganTree also attempts to rely on the Texas-based family members of the late inventor Theodore Brann: Jeremy Brann, his son; and Anne Brann, his wife. ECF No. 24 ¶ 37. (The Court evaluates their convenience under this factor, as opposed to the previous, because LoganTree describes Anne as "the sole owner of LoganTree" and Jeremy as a "key corporate witness. ECF No. 24 at 2 n.1; *id.* ¶ 37.). LoganTree alleges that Anne, based in Boerne, is "one of the key individuals to potentially provide . . . testimony that Theodore would have provided." ECF No. 24 at 2 n.1. LoganTree also alleges that Jeremy, based in Houston, "will provide evidence and testimony relating to this matter." *Id.* Yet LoganTree does not suggest *what* testimony either could provide. To be sure, the Brann Declaration testifies that Jeremy "assisted" his father "with the invention of the patented technology," but goes no further. ECF No. 23-8 ¶ 34. The Court will not accord Anne's convenience much if any weight given LoganTree's failure to identify what relevant and admissible testimony she has to offer. Jeremy's convenience will be accorded marginally more weight because the Brann Declaration evidences—and Apple has not controverted—Jeremy's involvement with the invention of the patented technology

The Court finds that this factor heavily favors transfer because while Apple identified several Apple employees with relevant and material knowledge working in the NDCA, LoganTree has only identified Jeremy Brann as residing in Texas and has failed to establish with any specificity the degree of relevant and material knowledge he may possess.

### 4. Practical Problems

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer" but delay in already protracted litigation may account for some weight. *In re Radmax*, 720 F.3d at 289.

This case is pre-*Markman* and because it has not reached an advanced stage, this Court deems this factor neutral.

### C. **Public Interest Factors**

### 1. Court Congestion

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347; *In re Apple*, 979 F.3d at 1343. A faster average time to trial means more efficient and economical resolutions of the claims at issue. That said, "[a] court's general ability to set a fast-paced schedule is not particularly relevant to this factor." *In re Apple*, 979 F.3d at 1344. Moreover, when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

The Federal Circuit has held that a difference in the number of pending cases between the transferor and transferee forums is "too tenuously related to any differences in speed by which these districts can bring cases to trial." *Id*. In another case, it has opined that a "proper" analysis

"looks to the number of cases per judgeship and the actual average time to trial." *In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at \*8 (Fed. Cir. Oct. 4, 2021).

The Federal Circuit has also held that, in the event time-to-trial statistics favor one district over another, the court must "point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight." *In re Juniper Networks*, 14 F.4th at 1322; *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380–81 (Fed. Cir. 2021).

The Federal Circuit has recently concluded that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks*, 14 F.4th at 1322. Bound by this guidance, the Court finds that this factor is neutral.

### 2.   Local Interests

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung*, 2 F.4th at 1380. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at \*4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Where the movant has a "significant presence" in the transferor forum, this factor "heavily" favors transfer where the transferee forum has a "significant

connection to the event that gave rise to [the] suit." *In re Apple*, 2021 U.S. App. LEXIS 33788, at *14–15. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)).

Both the transferor and transferee districts have a local interest in this Action because events giving rise to this Action occurred in both. The Accused Products and their Accused Functionalities were designed, developed, and tested in or around the NDCA, giving it a local interest. But LoganTree designed, developed, and tested the patented technology in or around Boerne and elsewhere in Texas, giving this District a local interest. The Court cannot conceive of how the NDCA would have a local interest merely because the accused technology was developed there—but this District has some lesser interest in this Action even though the patented technology was developed here.

Local interests would be split were it not for Apple's significant and incontestable presence in this District. Because Apple has a substantial presence here but LoganTree has none in the NDCA, this factor favors maintaining this Action in the WDTX, but only slightly so.

### 3. Familiarity of the Forum with Law-At-Issue

The parties do not dispute that this factor is neutral, and the Court agrees.

### 4. Conflict of Laws

The parties do not dispute that this factor is neutral, and the Court agrees.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Weighs in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Weighs heavily in favor of transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly weighs against transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

The first three factors favor transfer, with the cost of attendance for willing witnesses weighing heavily so. Only the local-interest factor weighs against transfer, and only slightly so. All other factors are neutral. Given the foregoing, the Court finds that Apple has shown that NDCA is clearly more convenient than WDTX. Apple's Motion is therefore **GRANTED**. The Court **ORDERS** that the above captioned case is transferred to NDCA.

SIGNED this 11th day of May, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE